IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JOSEPH MAURICE DEBERRY | ) | Case No. 09-12428 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION

This matter came before the Court on April 8, 2010 upon the Objection to Proof of Claim of Diana M. Alexander (the "Objection") filed by Joseph DeBerry, the above-referenced debtor, on February 12, 2010, and the Response to the Objection (the "Response") filed by Diana M. Alexander on March 18, 2010. At the hearing, Stephen D. Ling appeared on behalf of Mr. DeBerry, and Everett B. Saslow, Jr. and Robert E. Gray, III appeared on behalf of Diana M. Alexander. After consideration of the Objection, the Response, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Court holds that a portion of Mrs. Alexander's claim constitutes a domestic support obligation and will sustain the Objection in part.

### I.  JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), which this Court has the jurisdiction to hear and determine.

## II.  FACTS

Mr. DeBerry and Mrs. Alexander were married on August 7, 1999.  No children were born to the marriage.  Mr. DeBerry and Mrs. Alexander owned real property located at 1109 West Cornwallis Drive, Greensboro, Guilford County, North Carolina (the "Real Property") as tenants by the entirety.  On July 22, 2002, Mr. DeBerry and Mrs. Alexander entered into a Separation Agreement and Property Settlement Agreement (the "Separation Agreement").  Pursuant to paragraph 5(a) of the Separation Agreement, Mr. DeBerry was to remain in the home and pay Mrs. Alexander the two monthly mortgage payments until the home was refinanced or sold.  Paragraph 5(e) provides that certain marital debts are to be paid from the proceeds of the sale of the Real Property.[1]  To the extent that the proceeds do not cover the debts in full, Mr. DeBerry and Mrs. Alexander agreed to be equally responsible for full payment of the debts.  Mr. DeBerry also agreed to provide Mrs. Alexander with a monthly payment in the appropriate amount of one-half of all joint monthly payments on the marital debts.  Further, both parties

---

[1] Paragraph 5(e) states in relevant part: "Debts of the Parties. The parties have agreed that the following marital debts will be paid in the following order of priority out of the proceeds from the sale of the marital home as specified in [paragraph 5(a)]: the first mortgage to GMAC, the home equity line to Homecomings Financial, the First Citizens Small Business Loan in the approximate amount of $10,000.00, the First Citizens Small Business Loan in the approximate amount of $10,000.00, the First Citizens Small Business Loan in the approximate amount of $9,000.00; the First Union Wedding Loan in the approximate amount of $20,905.00.  To the extent that the proceeds from the sale of the home do not cover said debts in full, the parties have agreed that HUSBAND and WIFE shall be equally responsible for full payment of said debts, and both parties shall indemnify and hold the other harmless from any and all liability in connection with their respective debt obligations.  HUSBAND agrees to provide to WIFE a monthly payment in the appropriate amount to make one-half of the all [sic] joint monthly payments on said debts, said amount to be determined after the sale of the marital home.  Prior to the sale of the home, HUSBAND shall pay to WIFE a monthly sum equal to one-half of the monthly payments on said debts."

agreed to assume individual responsibility for other specific debts.[2]  Paragraph 15, entitled "Spousal Support," provides that Mr. DeBerry shall pay Mrs. Alexander, in lieu of periodic spousal support payments, an amount equal to one-half of the minimum monthly payments for the joint marital debts listed in paragraph 5(e).[3]  Finally, paragraph 17 provides that both Mr. DeBerry and Mrs. Alexander intend the provisions for support of Mrs. Alexander and the provisions for property division to constitute reciprocal consideration for each other.  They further agreed that the property division constitutes inseparable consideration for the support provisions of Mrs. Alexander and that the support provisions are nonmodifiable.  In 2003, Mr. DeBerry and Mrs. Alexander were divorced.

On February 23, 2003, the parties entered into an option to sell the Real Property.  As

---

[2]Paragraph 5(e) states in relevant part: "Additionally, HUSBAND shall be responsible for the following debts: Household Finance Loan in the approximate amount of $5,000; BB&T, First Union, MBNA, First USA, Household Finance, Washington Mutual, Capital One, Reeds, Dillards, Belks, Harris Teeter, Sedgefield Country Club, Teresa DeBerry (Child Support), Blazer Finances, Bell South, and [sic] Clarica (life insurance), and Aflac (health insurance). HUSBAND shall also be responsible for any and all other debts existing in his name or which he personally incurred on behalf of the parties, which debts may or may not be listed herein.
    WIFE shall be responsible for the following debts: GE Capital (Basset Furniture Loan); CitiBank Card, American Express, Land Rover Financing, Astoria Federal Bank, and Clarica (life insurance #622245)."

[3]Paragraph 15 states in relevant part: "Spousal Support. In lieu of periodic spousal support payments to WIFE, HUSBAND shall pay monthly to WIFE an amount equal to one-half of the minimum monthly payments for the joint marital debts listed in subparagraph 5(e) hereinabove.  The amount shall be the minimum monthly amount listed on the statements, and after application of any net sales proceeds or tax refunds, the monthly payments shall be revised. . . .  In consideration of, and expressly dependent upon these terms, WIFE agrees that she shall release and forever discharge the HUSBAND from any and all claims, demands, or actions for support, subsistence and maintenance, alimony or claims and demands of any nature whatever arising out of the marital relationship between the parties hereto.  HUSBAND has and does hereby release and forever discharge the WIFE from any and all claims, demands, or actions for support, subsistence and maintenance, alimony or claims and demands of any nature whatever arising out of the marital relationship between the parties hereto."

consideration for the option, the buyer paid $18,000 in earnest money to Mr. DeBerry, which he kept when the option expired.

On October 21, 2008, Mrs. Alexander filed a complaint against Mr. DeBerry in Guilford County District Court (the "Complaint"). The Complaint alleges that Mr. DeBerry materially breached the Separation Agreement with respect to the obligations imposed upon Mr. DeBerry pursuant to paragraphs 5(a) and 5(e). Specifically, the Complaint alleges that Mr. DeBerry did not refinance or pay the first and second mortgages on the Real Property as required by paragraph 5(a). The Complaint also alleges that Mr. DeBerry failed to pay his share of the joint marital debts and failed to pay some of the debts that he agreed to assume responsibility for as required by paragraph 5(e). As a result, according to the Complaint, the Real Property was foreclosed upon, and several creditors sought to obtain judgments against Mrs. Alexander, causing her to satisfy some of the debts without contribution from Mr. DeBerry.

On July 2, 2009, Mrs. Alexander filed an affidavit of default in her civil action against Mr. DeBerry. The affidavit sets forth Mrs. Alexander's monetary damages resulting from Mr. DeBerry's breach of the Separation Agreement, totaling $122,288.98.[4] On November 30, 2009,

---

[4]The claimed damages consist of the following: $9,000, which represents one-half of the earnest money deposit on an option to purchase and lease the Real Property kept by Mr. DeBerry; $1,525, which represents the cost of a 2007 refinance that did not take place due to title issues and damage to Mrs. Alexander's credit; $1,300, which represents the amount of private mortgage insurance that Mrs. Alexander has paid ($100 per month) since she refinanced her home in May 2008 with damaged credit; $22,800, which represents the amount of increased interest payments Mrs. Alexander has made since March 2005 due to her damaged credit; $30,500 in satisfaction of a judgment in favor of First Citizens Bank; $27,791.95 in satisfaction of a judgment in favor of MBNA; $10,000, which represents payment to Harvest Credit Management, MBNA; $3,000 in satisfaction of a judgment in favor of Professional Funding, LLC; $10,078.75, which represents the amount of a loan from Household Finance obtained by Mr. DeBerry by fraud; $2,242.97, which represents the legal fees of Dirk Sigmund, Esq. incurred by Mrs. Alexander; and $4,050.31, which represents the legal fees of Kim Bonuomo incurred by Mrs. Alexander.

the Guilford County District Court entered a default judgment in favor of Mrs. Alexander for $122,288.98 and $1,350.00 in legal fees, plus interest.

On December 22, 2009, Mr. DeBerry filed his petition for relief under Chapter 13 of the Bankruptcy Code. On January 6, 2010, Mrs. Alexander filed a proof of claim for $123,638.98 and claimed that the entire amount was entitled to priority status as a domestic support obligation ("DSO") pursuant to Section 507(a)(1). On February 12, 2010, Mr. DeBerry filed the Objection currently before the Court. The Objection asserts that the claim does not qualify as a domestic support obligation in that the claim is not in the nature of alimony, maintenance, or support of Mrs. Alexander. Therefore, the issue before this Court is whether the portion of the Separation Agreement pertaining to the payment of marital debts constitutes a DSO.

### III.  DISCUSSION

Section 523 of the Bankruptcy Code provides that certain debts are nondischargeable in a bankruptcy case. Specifically, Section 523 states that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> . . .
> (5) for a domestic support obligation;
> . . .
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a government unit; . . .

Section 101(14A) provides that a DSO is:

> a debt that accrues before, on, or after the date of the order of relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is -
> (A) owed to or recoverable by -

5

>>(I) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>(ii) a governmental unit;
>(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of -
>>(i) a separation agreement, divorce decree, or property settlement agreement;
>>(ii) an order of a court of record; or
>>(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Sections 523(a)(5) and (15) operate to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy. In re Johnson, 397 B.R. 289, 295 (Bankr. M.D.N.C. 2008) (Waldrep, J.). In a Chapter 13 case, an important distinction is drawn between DSOs and other post-marital obligations. DSOs may not be discharged in Chapter 13. 11 U.S.C. § 1328(a)(2); 11 U.S.C. § 523(a)(5). However, other types of debts arising out of a separation or divorce, including property settlements, are dischargeable. 11 U.S.C. § 1328(a)(2); 11 U.S.C. § 523(a)(15). If an obligation underlying the claim is deemed a DSO, pursuant to Section 523(a)(5), then the claim is entitled to priority treatment pursuant to Section 507(a)(1)(A), and any Chapter 13 plan must provide for its full payment, pursuant to Section 1322(a)(2). Johnson, 397 B.R. at 295-96.

In order for Mr. DeBerry's obligation to pay the marital debts to constitute a DSO, it

must be (1) owed to or recoverable by Mrs. Alexander; (2) in the nature of alimony, maintenance, or support; (3) established before Mr. DeBerry filed for bankruptcy relief by a separation agreement or divorce decree; and (4) not assigned other than for collection purposes. 11 U.S.C. § 101(14A); see also Johnson, 397 B.R. at 296.

Mrs. Alexander and Mr. DeBerry are jointly liable for some of their marital debts, while other debts are owed by the parties individually. The joint debts would be recoverable from either party if Mr. DeBerry did not pay. Due to the language in the Separation Agreement by which Mr. DeBerry agreed to hold Mrs. Alexander harmless, if she were forced to pay the joint marital debts, then Mr. DeBerry would be liable to Mrs. Alexander. Mr. DeBerry also assumed responsibility for some of the debts that were in the name of Mrs. Alexander alone, such as the debt to MBNA. If Mrs. Alexander was forced to pay an individual debt that Mr. DeBerry agreed to pay pursuant to the Separation Agreement, then he would be liable to Mrs. Alexander for such payment. Thus, the marital debts are owed to or recoverable by Mrs. Alexander.

The obligations to pay the marital debts were established pursuant to the Separation Agreement entered into on July 22, 2002, which is prior to the filing of Mr. DeBerry's Chapter 13 petition. The marital debts have not been assigned to another entity. Therefore, the only remaining issue is whether the obligation to pay certain marital debts is in the nature of alimony, maintenance, or support.

The determination of whether Mr. DeBerry's obligation constitutes a DSO is a fact specific analysis. In re Austin, 271 B.R. 97, 106 (Bankr. E.D. Va. 2001); In re Baker, 274 B.R. 176, 188 (Bankr. D.S.C. 2000); In re Catron, 164 B.R. 912, 918-19 (E.D. Va. 1994), aff'd, 43 F.3d 1465 (4th Cir. 1994). Mrs. Alexander has the burden to demonstrate that the obligations at

7

issue are in the nature of alimony, maintenance, or support. Grogan v. Garner, 498 U.S. 279, 287 (1991); In re Omine, 485 F.3d 1305, 1320 (11th Cir. 2007) (stating the burdened party needs to show that the parties intended the obligation as support); Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir. 1986).

Federal bankruptcy law, not state law, determines whether a debt is in the nature of support. In the Matter of Long, 794 F.2d 928 (4th Cir. 1986); In re Hudson, No. 06-81745, slip op. at 2 (Bankr. C.D. Ill. Nov. 27, 2007) (2007 WL 4219421); In re Adams, 254 B.R. 857, 861 (D. Md. 2000); see also In re Strickland, 90 F.3d 444, 446 (11th Cir. 1996) (a debt may be in the "nature of support" even though it would not legally qualify as support under state law); In re Yeates, 807 F.2d 874 (10th Cir. 1986) (same). The court must not rely only on the label used by the parties or the state court, but must look beyond the label to examine whether the debt actually is in the nature of support or alimony. Cummings v. Cummings, 244 F.3d 1263, 1265 (11th Cir. 2001); In re Brody, 3 F.3d 35, 38 (2d Cir. 1993).

In the Fourth Circuit, courts first look at the mutual or shared intent of the parties to create a support obligation. Tilley, 789 F.2d at 1078 (stating that intent is the threshold that must be crossed before any other concerns become relevant). The court should look at the parties' intent at the time of the divorce or separation. E.g., Brody, 3 F.3d at 38; Tilley, 789 F.2d at 1077; Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984). The labels attached to certain provisions in a separation agreement are not dispositve of their "nature," but the labels are persuasive evidence of the parties' intent. Tilley, 789 F.2d at 1077-78 (finding that a label in the agreement erects a "substantial obstacle" for the party seeking to overcome it).

The test used by courts in the Fourth Circuit to determine the mutual or shared intent of

the parties is comprised of the following factors: (1) the actual substance and language of the agreement, (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (i.e., daily necessities), and (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse.  Johnson, 397 B.R. at 297 (citing Catron, 164 B.R. at 919).  As this list is non-exclusive, courts should consider all relevant evidence.  Id.  Ultimately, courts may look beyond the four corners of a divorce decree or the agreement of the parties to determine the nature of the payments constituting the debts sought to be discharged.  Id. (citing In re Cribb, 34 B.R. 862, 864 (Bankr. D.S.C. 1983); see also In re Bristow, No. 04-50235, slip op. at 3 (Bankr. M.D.N.C. April 22, 2005) (2005 WL 1321996).

      After considering all relevant factors, the Court finds that only a portion of Mr. DeBerry's obligation is in the nature of alimony, maintenance, or support.  The language of the Separation Agreement evidences the parties' intent that only Mr. DeBerry's obligation to pay one-half of the debts that were to be settled from the sale of the Real Property is in the nature of alimony, maintenance, or support.  This conclusion follows from the Separation Agreement, which states that "in lieu of periodic spousal support payments" Mr. DeBerry shall pay Mrs. Alexander one-half of the minimum monthly payments for the joint marital debts listed in paragraph 5(e).  Paragraph 5(e) lists several joint debts which were to be paid from the sale of the Real Property: the first mortgage in favor of GMAC, the home equity line in favor of Homecomings Financial, the two $10,000 First Citizens Small Business Loans, the $9,000 First Citizens Small Business Loan, and the $20,905 First Union Wedding Loan.  The provision releasing Mr. DeBerry from any future maintenance, alimony, or support claims of Mrs.

Alexander was expressly conditioned upon Mr. DeBerry making the required payments. It is also evident from paragraph 5(a) that the parties intended Mr. DeBerry to remain in the home until it could be refinanced or sold and pay Mrs. Alexander the two monthly mortgage payments. The purpose of assigning the obligation to pay these joint marital debts to Mr. DeBerry was to allow Mrs. Alexander to maintain a separate residence and fulfill her mortgage obligations. As a result of Mr. DeBerry's failure to comply with the terms of the Separation Agreement, the mortgage lenders foreclosed on the Real Property. Accordingly, the following portions of Mrs. Alexander's claim constitute a DSO: $9,000, comprising one-half of the $18,000 earnest money deposit on the Real Property, and one-half of the $30,500 paid by Mrs. Alexander in satisfaction of the debts to First Citizens Bank, for a total of $24,250. The remainder of the joint marital debts outlined in paragraph 5(e) were not claimed by Mrs. Alexander.[5]

      The remaining portions of Mrs. Alexander's claim do not constitute a DSO. First, Mrs. Alexander's attempts to quantify the amount of damages resulting from her claims of damaged credit are far too speculative. The record is devoid of evidence that these damages were a direct result of Mr. DeBerry's breach of the Separation Agreement or that the parties intended Mr. DeBerry to pay claims of this nature. Second, only the payment of the joint marital debts to be paid from the sale of the Real Property was intended to serve as support for Mrs. Alexander. The division of the remaining debt obligations, which primarily consist of credit cards and loans, is in the nature of a property settlement. While unfortunate, the fact that Mrs. Alexander satisfied obligations for which Mr. DeBerry was responsible under the Separation Agreement

---

[5]The mortgage in favor of GMAC, the home equity line in favor of Homecomings Financial, and the First Union Wedding Loan are not included in Mrs. Alexander's claim or listed in her default affidavit as damages resulting from Mr. DeBerry's breach of the Separation Agreement. The Court concludes that these debts are no longer owed by either party.

does not change this result.  Finally, Mrs. Alexander did not provide any evidence as to the nature of the attorneys' fees in her claim.  As such, Mrs. Alexander has not met her burden that these debts constitute a DSO.

## IV.  CONCLUSION

The obligation of Mr. DeBerry to pay one-half of the joint marital debts constitutes a DSO pursuant to Section 523(a)(5) of the Bankruptcy Code.  Therefore, the Objection will be sustained in part, and only $24,250 of Mrs. Alexander's claim will be allowed as a DSO.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

```
April 30, 2010
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JOSEPH MAURICE DEBERRY | ) | Case No. 09-12428 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**PARTIES IN INTEREST**

Joseph Maurice DeBerry

Stephen D. Ling, Esq.

Diana M. Alexander

Everett B. Saslow, Jr., Esq.

Anita Jo Kinlaw Troxler, Chapter 13 Trustee

12